# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

### SOUTHERN DIVISION

| | |
|---|---|
| PATRICK BAUMGARTNER,<br><br>                         Plaintiff,<br><br>vs.<br><br>FARMLAND MUTUAL INSURANCE<br>COMPANY,<br><br>                         Defendant. | Civ. #05-4078<br><br>**FIRST AMENDED COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

COMES NOW, the Plaintiff, Patrick Baumgartner, by and through his counsel of record, and for its causes of action against the Defendant, does hereby state and allege as follows:

## NATURE OF THE ACTION

This is a diversity suit to recover underinsured motorists coverage (UIM) brought by Plaintiff Patrick Baumgartner against Defendant Farmland Mutual Insurance Company ("Farmland Insurance"). Baumgartner was severely and permanently injured in an automobile accident that occurred within the scope of his employment with Broin & Associates, Inc. He exhausted the minimal limits available on the policies of the tortfeasor and vehicle responsible for the accident, and now seeks to be made whole pursuant to the underinsurance coverage available to him as an insured under his employer's policy with Farmland Insurance.

## PARTIES

1.      Plaintiff Patrick Baumgartner is a citizen of the State of South Dakota and resident of Minnehaha County.

2.      Upon information and belief, Defendant Farmland Mutual Insurance Company is a corporation duly organized and existing under the laws of the State of Iowa, with a principal place of business located at 1963 Bell Avenue, Des Moines, Iowa, which at all relevant times was duly authorized to issue insurance policies in the State of South Dakota.   Farmland Insurance is an affiliated company of Nationwide Mutual Insurance Company, an Ohio mutual insurance company with its principal place of business in Columbus, Ohio.

## JURISDICTION AND VENUE

3.      Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 based upon the diversity of the parties.  The amount in controversy exceeds the sum of $75,000.

4.      A substantial part of the events giving rise to this action occurred in South Dakota, and thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

## FACTS

5.      At all times relevant to this action, Plaintiff Patrick Baumgartner was an employee of Broin & Associates, Inc. ("Broin"), a designer and builder of ethanol plants, located in Sioux Falls, South Dakota.

6.      Defendant Farmland Insurance provided business auto coverage to Broin and its employees pursuant to an insurance policy issued as Policy Number CA 850500A ("the Policy"). *See* Exhibit A.  The Policy was renewed, fully paid, effective, and in force from January 1, 2004 through January 1, 2005.

7.      The Plaintiff was an insured under the Policy, which provided underinsurance coverage to Broin and its employees, including the Plaintiff, up to a limit of one million dollars ($1,000,000). *See* Exhibits A & B.

2

8.      On March 17, 2004, while the Policy was in force, the Plaintiff was severely and permanently injured in an automobile accident while driving a vehicle owned Broin, and while acting within the scope of his employment.  *See* Exhibit C.  The accident and the Plaintiff's resulting injuries and other damages were the fault of Adam Wiersma.  The vehicle that Wiersma was driving slid through an intersection, and the Plaintiff was struck by a pickup that was trying to avoid Wiersma's vehicle.  The collision between the third vehicle and Plaintiff's vehicle was solely and proximately caused by Wiersma's negligence.  Wiersma subsequently pled guilty to a citation filed against him as a result of the accident.

9.      The tortfeasor and the vehicle that he was driving were underinsured.  Adam Wiersma had personal liability insurance limits of only $50,000.  An additional $100,000 in coverage was available from the policy held by Paul and Glee Wiersma (parents of Adam Wiersma), the owners of the vehicle that struck and injured the Plaintiff.  These policy limits were substantially less than any amount reasonably necessary to compensate the Plaintiff for his injuries and other damages sustained in the accident.

10.     The limits of both policies were tendered to Plaintiff.  Pursuant to the procedure detailed in *Schmidt v. Clothier*, 338 N.W.2d 356 (Minn. 1983), Farmland Insurance was placed on notice of the tender of limits and was offered the opportunity substitute its own draft. Plaintiff informed Farmland Insurance that it would allow a credit in the amount of the settlement against any liability which might be found to exist in further proceedings against Wiersma or against Farmland Insurance directly on UIM coverage.  Farmland Insurance declined and waived the opportunity to substitute its draft or object to the settlement.

11.     On or about September 8, 2004, the Plaintiff accepted the limits on the two policies covering the tortfeasor and his vehicle and entered into a Release and Indemnity Agreement. *See* Exhibit D.

12.     The Release and Indemnity Agreement included the following provision: "It is acknowledged by all parties hereto that a policy of underinsurance coverage is in place to supplement the coverage afforded the Baumgartners, issued by Farmland Mutual Insurance Company in the amount of $1,000,000.  Nothing in this agreement limits or confines the Baumgartners' access to those benefits.  Prior to the release, the said underinsured carrier was put on notice to either substitute its draft (to retain subrogation rights against Releasees hereunder) or to waive those rights.  The parties acknowledge that the underinsurer has waived those rights." Exhibit D.

13.     The insurance limits received from the policies covering the tortfeasor pursuant to the Release and Indemnity Agreement do not even come close to fully compensating the Plaintiff for his serious and permanent injuries and other damages that he suffered in the automobile accident caused by the tortfeasor's negligence.

14.     Plaintiff thereafter made a timely demand on Defendant Farmland Insurance for payment of Plaintiff's uncompensated damages as provided by the terms of the Policy, and Defendant refused and still refuses payment of the demanded sum or any sum that will adequately compensate Plaintiff for his physical injuries and other damages.

## <u>COUNT ONE</u>

15.     Plaintiff hereby realleges paragraphs 1-14 and all previous paragraphs and incorporates them as though fully set forth herein.

16.     By virtue of its Policy of insurance in effect on March 17, 2004, and Plaintiff's status as an insured under the policy, Defendant Farmland Insurance is contractually obligated to pay Plaintiff underinsured motorist benefits as a result of the automobile accident caused by the tortfeasor that occurred while the Plaintiff was driving a vehicle owned by Broin within the scope of his employment with Broin.

17.     Defendant Farmland Mutual Insurance breached its duty to pay Plaintiff underinsured motorist benefits pursuant to the Policy.

18.     Defendant's breach of its duties under the Policy has resulted in substantial damages to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

1.     For judgment against the Defendant in an amount to be determined by the jury that will fully compensate Plaintiff for the severe and permanent injuries and all other damages that he has sustained;

2.     For prejudgment and post-judgment interest;

3.     For costs and disbursements herein; and

4.     For such other and further relief as the Court deems just and equitable.

Dated this 15th day of June, 2005.

JOHNSON, HEIDEPRIEM, MINER
MARLOW & JANKLOW, LLP

BY _____
Scott N. Heidepriem
Scott A. Abdallah
Ronald A. Parsons, Jr.
P.O. Box 1107
Sioux Falls, SD 57101-1107
(605) 338-4304

*Attorneys for the Plaintiff*

5

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

_____
Scott N. Heidepriem

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **First**

**Amended Complaint and Demand for Jury Trial** was served by first class United States mail,

postage prepaid, upon the following individual:

Stuart Shkolnick
Commercial Claims Specialist
Farmland Mutual Insurance Company
1100 Locust Street, Dept. 3010
Des Moines, IA 50391-3010

Dated this 15th day of June, 2005.

_____
Scott N. Heidepriem

**Farmland** Insurance
Nationwide' Agribusiness

PCLARK    / 01/06/2004

## BUSINESS AUTO COVERAGE FORM
## DECLARATION

☐ New    ☒ Renewal    ☐ Endorsement - Effective: 01/01/2004    12:01a.m. Standard Time, at your location as stated herein.

Issued By: FARMLAND MUTUAL INSURANCE CO

Replaces any previous declaration bearing the same number for this policy period.

Named Insured and Mailing Address

BROIN AND ASSOCIATES INC
1107 HAZELTINE BLVD
SUITE 305
CHASKA MN 55318

Policy Number:  CA 850500A
Client Number:  0000850500

Producer

PALMER & CAY OF MINNESOTA
6600 CITY WEST PKWAY #205
EDEN PRAIRIE MN 55344

Phone Number:    952-983-5820

**Policy Period: From** 01/01/04    **To** 01/01/05
12:01 A.M. Standard Time at your mailing address.

**Form of Business:**   CORPORATION

**Description of Business:** DESIGNER & BUILDER OF ETHANOL PLANTS

In return for the payment of the premium, and subject to all the terms of this policy, **we** agree to provide **you** with the insurance as stated in this policy.

Endorsements Attached to this Policy:  **See Schedule of Policy Forms and Endorsements**

Countersigned:_____        By_____

　　　　　　　Date                                     Authorized Representative

**CCAB140 0902**        Includes copyrighted material of Insurance Services Office Inc.

**EXHIBIT**

A

Policy Term: 01/01/04    to 01/01/2005      Effective: 01/01/2004

Policy Number: CA 850500A

**ITEM TWO:**    SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM | |
|---|---|---|---|---|
| LIABILITY | 1 | $ 1,000,000 | $ | 18,881 |
| PERSONAL INJURY PROTECTION (PIP) (or equivalent No-Fault coverage) | 5 | Separately stated in each PIP endorsement minus (See Schedule) Deductible. | $ | 235 |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-Fault coverage) | | Separately stated in each Added PIP endorsement | $ | |
| PROPERTY PROTECTION INSURANCE (PPI) (Michigan only) | | Separately stated in the PPI endorsement minus Deductible for each accident. | $ | |
| AUTO MEDICAL PAYMENTS | 2 | $ 5,000 | $ | 528 |
| UNINSURED MOTORISTS (UM) | 2 | Separately state in each UM endorsement. | $ | 242 |
| UNDERINSURED MOTORISTS (UIM) (When not included in Uninsured Motorists Coverage) (Not applicable in New York - see NY supplement) UNINSURED MOTORIST - PHYSICAL DAMAGE (UMPD) (Where available) | 2 | Separately stated in the each UIM endorsements, when not included in the UM Coverage.  Separately stated in each UMPD endorsement where applicable. | $ | 863 |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7  8 | Actual Cash Value or Cost of Repair, whichever is less minus $1,000 Deductible for each covered auto. But no Deductible applies to loss caused by Fire or Lightning. See ITEM FOUR For Hired Or Borrowed Autos. | $ | 1,857 |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS | | Actual Cash Value or Cost of Repair, whichever is less minus Deductible for each covered auto for loss caused by Mischief or Vandalism. See ITEM FOUR For Hired Or Borrowed Autos. | $ | |
| PHYSICAL DAMAGE COLLISION | 7  8 | Actual Cash Value or Cost of Repair, whichever is less minus $1,000 Deductible for each covered auto. See ITEM FOUR For Hired Or Borrowed Autos. | $ | 3,351 |
| PHYSICAL DAMAGE TOWING AND LABOR (Not available in California) | | for each disablement of a private passenger auto. | $ | |
| | | | $ | |
| | | Premium For Endorsements | $ | |
| | | Surcharges, Taxes, Etc. | $ | |
| | | *Estimated Total Premium | $ | 25,957 |

*This policy may be subject to audit.

**CCAB140 0902**     Includes copyrighted material of Insurance Services Office Inc.     Page 2 of 3

Policy Term: 01/01/04        to  01/01/2005

Effective:  01/01/2004
Policy Number   CA 850500A

**ITEM THREE:**

☒  Schedule of Covered Autos You Own - See Schedule

☐  Composite Rate Policy - *Item three does not apply; See Composite Rate Endorsement.*

**ITEM FOUR:**  Schedule of Hired or Borrowed Covered Auto Coverage and Premiums

### LIABILITY COVERAGE – RATING BASIS, COST OF HIRE

| State(s) | Estimated Cost of Hire For Each State | Rate per each $100 Cost of Hire | Factor (If Liability Coverage Primary) | PREMIUM |
|---|---|---|---|---|
| IA, MI, MN, SD | IF ANY | | | $84 |
| | | | Total Premium | $84 |

Cost of hire means the total amount you incur for the hire of **autos** you don't own (not including **autos** you borrow or rent from your partners or **employees** or their family members).  Cost of hire does not include charges for services performed by motor carriers of property or passengers.

### PHYSICAL DAMAGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY - DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | Actual Cash Value or Cost Of Repair or Whichever is Less, Minus $1,000   Ded. For Each Covered Auto. But No Deductible Applies To Loss Caused By Fire Or Lightning. | IF ANY | | $100 |
| SPECIFIED CAUSES OF LOSS | Actual Cash Value or Cost Of Repair or Whichever is Less, Minus $25 Ded. For Each Covered Auto For Loss Caused By Mischief or Vandalism. | | | |
| COLLISION | Actual Cash Value or Cost Of Repair or Whichever is Less, Minus $1,000   Ded. For Each Covered Auto. | IF ANY | | $100 |
| | | | TOTAL PREMIUM | $200 |

**ITEM FIVE:**  Schedule for Non-Ownership Liability

| Name of Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees Number of Partners | 150 | $1,059 |
| Social Service Agency | Number of Employees Number of Volunteers | | |
| | | TOTAL | $1,059 |

## SCHEDULE OF COVERED AUTOS YOU OWN

| Cov Auto No. | Year | Make | Model | VIN | Garage No. | State |
|---|---|---|---|---|---|---|
| 001 | 1993 | BUICK | LESABRE | 1G4HP53L8PH545503 | 023 | IA |
| 002 | 2003 | BUICK | CENTURY | 2G4WS52J131207847 | 023 | IA |
| 001 | 1996 | BUICK | LESABRE | 1G4HP52K6TH437884 | 024 | MI |
| 001 | 1997 | FORD | TAURUS | 1FALP5222VG192370 | 018 | MN |
| 002 | 1995 | CHEV | LUMINA | 2G1WL52MOS1166260 | 016 | MN |
| 001 | 2002 | GMC | YUKON | 1GKEK63U22J160819 | 001 | SD |
| 002 | 2001 | PONTIAC | BONNEVILLE | 1G2HX54K014192204 | 001 | SD |
| 003 | 2001 | PONTIAC | BONNEVILLE | 1G2HX54K414250721 | 001 | SD |
| 004 | 2001 | CHEVROLET | TAHOE | 1GNEK13T01R137889 | 001 | SD |
| 005 | 2001 | CHEVROLET | SILVERADO | 2GCEK19T111315446 | 001 | SD |
| 006 | 1999 | PONTIAC | GRAND AM | 1G2NE53E0XM773734 | 001 | SD |
| 007 | 1999 | PONTIAC | BONNEVILLE | 1G2HX52K2XH205930 | 001 | SD |
| 008 | 1999 | OLDSMOBILE | INTRIGUE | 1G3WX52H5XF342492 | 001 | SD |
| 009 | 1999 | CHEVROLET | K24 PICKUP | 1GCGK24U9XE134522 | 001 | SD |
| 010 | 1999 | BUICK | CENTURY | 2G4WS52M3X1478330 | 001 | SD |
| 011 | 1998 | CHEVROLET | PICKUP | 1GCEK19R5WR125250 | 001 | SD |
| 012 | 1998 | BUICK | REGAL | 2G4WB52K5W1408602 | 001 | SD |
| 013 | 1995 | BUICK | LESABRE | 1G4HP52L6SH542531 | 001 | SD |
| 014 | 1990 | PONTIAC | BONNEVILLE | 1G2HX54C7L1235420 | 001 | SD |
| 015 | 2001 | FORD | PICKUP | 1FTRX18L51NA98714 | 004 | SD |
| 016 | 2002 | CHEVROLET | TAHOE | 1GNEK13202J121809 | 001 | SD |
| 017 | 2001 | CHEVY 4 DOOR | PICKUP | 1GTHK23U91F192413 | 001 | SD |
| 018 | 2000 | FORD SUPER | CAB | 1FTNW21LOYED21057 | 001 | SD |
| 019 | 2004 | CHEV | TAHOE | 1GNEK13Z54R164028 | 001 | SD |

| Cov Auto No. | | | | | |
|---|---|---|---|---|---|
| 001 | | | | 6 | 739800 |
| 002 | | | | 1 | 739800 |
| 001 | | | | 6 | 739800 |
| 001 | | | | 6 | 739800 |
| 002 | | | | 6 | 739800 |
| 001 | | | | 3 | 739800 |
| 002 | | | | 4 | 739800 |
| 003 | | | | 4 | 739800 |
| 004 | | | | 4 | 739800 |
| 005 | R<200 | C | LT | 4 | 035990 |
| 006 | | | | 4 | 739800 |
| 007 | | | | 6 | 739800 |
| 008 | | | | 6 | 739800 |
| 009 | R<200 | C | LT | 6 | 739800 |
| 010 | | | | 6 | 035990 |
| 011 | R<200 | C | LT | 6 | 739800 |
| 012 | | | | 6 | 035990 |
| 013 | | | | 6 | 739800 |
| 014 | | | | 6 | 739800 |
| 015 | R<200 | C | LT | 4 | 035990 |

CCAB139 0902        Includes copyrighted material of Insurance Services Office inc.        Page 1 of 5

| Item Number | | Classification | | | | |
|---|---|---|---|---|---|---|
| 016 | | | | | | |
| 017 | R<200 | C | | LT | 3 | 739800 |
| 018 | R<200 | C | | LT | 4 | 035990 |
| 019 | | | | | 5 | 035990 |
| | | | | | 1 | 739800 |

**Coverages – Premiums, Limits And Deductibles (absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.)**

| Item Number | Limit | Premium | Limit | Deductible | Deductible | Deductible |
|---|---|---|---|---|---|---|
| 001 | 1,000,000 | 376 | | | | |
| 002 | 1,000,000 | 376 | | | 5,000 | 12 |
| 001 | 1,000,000 | 378 | SEE ENDT | | 5,000 | 12 |
| 001 | 1,000,000 | 642 | SEE ENDT | 73 | 5,000 | |
| 002 | 1,000,000 | 517 | SEE ENDT | 66 | 5,000 | |
| 001 | 1,000,000 | 591 | | 89 | 5,000 | |
| 002 | 1,000,000 | 591 | | | 5,000 | 19 |
| 003 | 1,000,000 | 591 | | | 5,000 | 19 |
| 004 | 1,000,000 | 591 | | | 5,000 | 19 |
| 005 | 1,000,000 | 1,332 | | | 5,000 | 19 |
| 006 | 1,000,000 | 591 | | | 5,000 | 44 |
| 007 | 1,000,000 | 591 | | | 5,000 | 19 |
| 008 | 1,000,000 | 591 | | | 5,000 | 19 |
| 009 | 1,000,000 | 1,332 | | | 5,000 | 19 |
| 010 | 1,000,000 | 591 | | | 5,000 | 44 |
| 011 | 1,000,000 | 1,332 | | | 5,000 | 19 |
| 012 | 1,000,000 | 591 | | | 5,000 | 44 |
| 013 | 1,000,000 | 591 | | | 5,000 | 19 |
| 014 | 1,000,000 | 372 | | | 5,000 | 19 |
| 015 | 1,000,000 | 1,332 | | | 5,000 | 12 |
| 016 | 1,000,000 | 591 | | | 5,000 | 44 |
| 017 | 1,000,000 | 1,332 | | | 5,000 | 19 |
| 018 | 1,000,000 | 1,332 | | | 5,000 | 44 |
| 019 | 1,000,000 | 591 | | | 5,000 | 44 |
| TOTAL PREMIUM | | | | | | 19 |

| Item Number | Coverage Limit | Limit | Premium |
|---|---|---|---|
| 001 | 1,000,000 | 21 | 41 |
| 002 | 1,000,000 | 21 | 41 |
| 001 | 1,000,000 | 40 | INCLUDED |
| 001 | 1,000,000 | 26 | 63 |
| 002 | 1,000,000 | 26 | 63 |
| 001 | 1,000,000 | 6 | 37 |

| Cov. and No. | Uninsured/Underinsured Limit | Premium | Uninsured Motorists (where applicable) Premium |
|---|---|---|---|
| 002 | 1,000,000 | 6 | 37 |
| 003 | 1,000,000 | 6 | 37 |
| 004 | 1,000,000 | 6 | 37 |
| 005 | 1,000,000 | 5 | 29 |
| 006 | 1,000,000 | 6 | 37 |
| 007 | 1,000,000 | 6 | 37 |
| 008 | 1,000,000 | 6 | 37 |
| 009 | 1,000,000 | 5 | 29 |
| 010 | 1,000,000 | 6 | 37 |
| 011 | 1,000,000 | 5 | 29 |
| 012 | 1,000,000 | 6 | 37 |
| 013 | 1,000,000 | 6 | 37 |
| 014 | 1,000,000 | 6 | 37 |
| 015 | 1,000,000 | 5 | 29 |
| 016 | 1,000,000 | 6 | 37 |
| 017 | 1,000,000 | 5 | 29 |
| 018 | 1,000,000 | 5 | 29 |
| 019 | 1,000,000 | 6 | 37 |
| TOTAL PREMIUM | | | |

## ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN

Coverages - Premiums, Limits And Deductibles (absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.)

| Cov. Auto No. | Comprehensive | Specified Causes of Loss | | Collision | Premium |
|---|---|---|---|---|---|
| 001 | | | | | |
| 002 | 1,000 | 100 | | 1,000 | 151 |
| 001 | | | | | |
| 001 | | | | | |
| 002 | | | | | |
| 001 | 1,000 | 196 | | 1,000 | 292 |
| 002 | 1,000 | 108 | | 1,000 | 195 |
| 003 | 1,000 | 108 | | 1,000 | 195 |
| 004 | 1,000 | 108 | | 1,000 | 195 |
| 005 | 1,000 | 105 | | 1,000 | 188 |
| 006 | 1,000 | 41 | | 1,000 | 87 |
| 007 | 1,000 | 79 | | 1,000 | 146 |
| 008 | 1,000 | 52 | | 1,000 | 117 |
| 009 | 1,000 | 81 | | 1,000 | 145 |
| 010 | 1,000 | 52 | | 1,000 | 117 |
| 011 | 1,000 | 95 | | 1,000 | 182 |
| 012 | 1,000 | 52 | | 1,000 | 117 |
| 013 | | | | | |
| 014 | | | | | |
| 015 | 1,000 | 105 | | 1,000 | 188 |
| 016 | 1,000 | 120 | | 1,000 | 243 |
| 017 | 1,000 | 121 | | 1,000 | 239 |
| 018 | 1,000 | 114 | | 1,000 | 211 |
| 019 | 1,000 | 120 | | 1,000 | 243 |



| Cov. Auto No. | Towing and Labor Limit(s) | Towing and Labor Premium |
|---|---|---|
| 001 | | |
| 002 | | |
| 001 | | |
| 001 | | |



002
001
002
003
004
005
006
007
008
009
010
011
012
013
014
015
016
017
018
019

CA 850500A   ## Schedule of Policy Forms and Endorsements

| Form Number and Edition | Title |
|---|---|
| CA0001 1001 | AUTO COVERAGE FORM |
| CA0038 1202 | WAR EXCLUSION |
| CA0110 1001 | MI - CHANGES |
| CA0123 1001 | SD - CHANGES |
| CA0138 0897 | MN - CHANGES |
| CA0160 0203 | IA - CHANGES |
| CA0217 0394 | MI - CANCELLATION AND NONRENEWAL |
| CA0218 0698 | MN - CANCELLATION AND NONRENEWAL |
| CA2054 1001 | EMPLOYEE HIRED AUTOS |
| CA2055 1001 | FELLOW EMPLOYEE COVERAGE |
| CA2112 0401 | IA - UNINSURED AND UNDERINSURED MOTORISTS COVERAGE |
| CA2124 0997 | MN - UNINSURED AND UNDERINSURED MOTORISTS COVERAGE |
| CA2131 0703 | MI - UNINSURED MOTORISTS COVERAGE |
| CA2141 0401 | SD - UNINSURED/UNDERINSURED MOTORISTS COVERAGE |
| CA2220 1001 | MI - PIP |
| CA2224 0994 | MI - PROPERTY PROTECTION COVERAGE |
| CA2225 0200 | MN - PIP |
| CA2361 1202 | EXCLUSION OF TERRORISM |
| CA9903 1293 | AUTO MEDICAL PAYMENTS COVERAGE |
| CA9933 0299 | EMPLOYEES AS INSUREDS |
| CA9948 0902 | POLLUTION LIABILITY BROADENED COVERAGE FOR AUTOS |
| CCAB134 0701 | SCHEDULE OF POLICY FORMS |
| CCAB139 0902 | SCHEDULE OF COVERED AUTOS YOU OWN |
| CCAB140 0902 | BUSINESS AUTO COVERAGE FORM DECLARATION |
| CCAB155 0103 | SUPPLEMENTARY SCHEDULE - TERRORISM |
| IL0003 0702 | CALCULATION OF PREMIUM |
| IL0017 1198 | COMMON POLICY CONDITIONS |
| IL0021 0702 | NUCLEAR LIABILITY EXCLUSION |
| IL0184 0702 | SD - CHANGES APPRAISAL |
| IL0232 0902 | SD - CANCELLATION AND NONRENEWAL |
| IL0276 0702 | IA - CANCELLATION AND NONRENEWAL |
| IL0286 0702 | MI - CANCELLATION AND NONRENEWAL |
| IL0985 0103 | DISCLOSURE PURSUANT TO TERRORISM RISK |
| MLXB148 0600 | NAMED INSUREDS |

**CCAB134 0701**

CA 850500A

# Schedule of Policy Forms and Endorsements

Form Number
and Edition        Title
MLXB155 0600      EARLIER NOTICE OF CANCELLATION FROM US
MLXM001 0601      MUTUAL POLICY CONDITIONS

## Supplementary Schedule - Terrorism

☐ New   ☒ Renewal   ☐ Endorsement - Effective: 01/01/2004 | 12:01a.m. Standard Time, at your location as stated herein.

Issued By: FARMLAND MUTUAL INSURANCE CO | Replaces any previous declaration bearing the same number for this policy period.

Named Insured and Mailing Address

BROIN AND ASSOCIATES INC
1107 HAZELTINE BLVD
SUITE 305
CHASKA MN 55318

Policy Number:  CA 850500A
Client Number:  0000850500

PALMER & CAY OF MINNESOTA
6600 CITY WEST PKWAY #205
EDEN PRAIRIE MN 55344

Phone Number:   952-983-5820

**Policy Period: From** 01/01/04   **To** 01/01/05
12:01 A.M. Standard Time at your mailing address.

**Form of Business:**  CORPORATION
**Description of Business:** DESIGNER & BUILDER OF ETHANOL PLANTS

In return for the payment of the premium, and subject to all the terms of this policy, **we** agree to provide **you** with the insurance as stated in this policy.

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

### DISCLOSURE OF TERRORISM PREMIUM

(Terrorism premium is subject to change with adjustments to the base policy premium, including audit.)

#### Commercial Auto

The coverage offer for losses arising out of acts of terrorism as defined in Section 102(1) of the federal Terrorism Risk Insurance Act of 2002 has been rejected. The signed rejection request is on file with the company.

The portion of your premium attributable to statutory coverage required by the state are:

| State | Liability, Uninsured and/or Underinsured Motorists and Personal Injury Protection Coverage (where required)** |
|-------|--------------------------------------------------------------------------------------------------------------|
|       |                                                                                                              |

**In Connecticut, Kansas, Kentucky, New Jersey, and Oregon, for Liability, Uninsured and/or Underinsured Motorists Coverage and Personal Injury Protection Coverage in this state, the terrorism exclusion applies above the minimum limits required for these coverages by the state's Financial Responsibility Statutes and/or Motor Vehicle Liability Insurance Statutes. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to losses resulting from an act of terrorism, for limits up to the minimum state compulsory limits of insurance for Liability, Uninsured and/or Underinsured Motorists, and Personal Injury Protection Coverage.

CCAB155 0103

# MANDATORY ENDORSEMENT

## MUTUAL POLICY CONDITIONS

**MUTUALITY.** Because this policy is issued by a mutual insurance company, you are a member of the Company while this policy is in force. While a member, you are entitled to one vote only, either in person or by proxy, at meetings of the Company. You are entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in your policy.

**NO CONTINGENT LIABILITY.** The policy is non-assessable, meaning that you are not subject to any assessment beyond the premiums we require for each policy term.

**DATE OF ANNUAL MEETING.** The annual meeting of members of the Company will be held at the Home Office in Des Moines, Iowa, on the Thursday preceding the fourth Friday of May at 9:00 a.m., if not a legal holiday, then on the day following at the same time. We will mail notice of any change in meeting dates, time or place to you at your address last known to us at least twenty (20) days prior to the rescheduled meeting date.

**IN WITNESS WHEREOF,** Farmland Mutual Insurance Company has caused this policy to be signed by its President and Secretary at Des Moines, Iowa, and countersigned by a duly authorized representative of the Company.

**ATTEST:**

Secretary

President

**MLXM001 0601**

VSF

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## NAMED INSUREDS ENDORSEMENT

This endorsement modifies insurance provided under the following:

> **Boiler and Machinery Coverage Part**
> **Commercial Automobile Coverage Part**
> **Commercial Crime Coverage Part**
> **Commercial General Liability Coverage Part**
> **Commercial Inland Marine Coverage Part**
> **Commercial Property Coverage Part**
> **Commercial Output Policy - Property Coverage Part**
> **Commercial Output Policy - Income Coverage Part**
> **Workers' Compensation and Employers' Liability Coverage Part**

The insurance afforded under this policy applies to all persons or organizations listed in the SCHEDULE below as **named insureds**, subject to the following provisions:

1. The first **named insured** is authorized to act on behalf of each **named insured** in all matters pertaining to this insurance.

2. Any return premiums shall be paid to the first **named insured**.

3. The first **named insured** declares that all firms named in the policy as **named insureds** are owned or financially controlled by the same interests.

Schedule of Named Insureds

BROIN AND ASSOCIATES INC
AGRI-POLYMERIX LLC

**ALL OTHER CONDITIONS AND PROVISIONS OF THE POLICIES REMAIN UNCHANGED BY THIS ENDORSEMENT.**

MLXB148 0600                      Page 1 of 1                      VSF

POLICY NUMBER: CA 850500A

CLIENT NUMBER: 0000850500

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT- RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Hart Forms & Services
Reorder No. 14-8234

**IL 00 17 11 98**

Copyright, Insurance Services Office, Inc., 1998

**Page 1 of 1**

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to· indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or

   on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possesions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore pro-

Copyright, ISO Properties, Inc., 2001

cessed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such

equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, ISO Properties, Inc., 2001

POLICY NUMBER: CA 850500A

IL 09 85 01 03

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

### SCHEDULE*

**Terrorism Premium (Certified Acts)** $ 0

**Additional information, if any, concerning the terrorism premium:**

---

\*   Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A.  Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

IL 09 85 01 03

© ISO Properties, Inc., 2003

Page 1 of 1

IL 02 76 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# IOWA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The **Cancellation Common Policy** Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation Requirements**

   a. We may cancel this policy, by mailing or delivering to the first Named Insured and any loss payee written notice of cancellation at least:

      (1) 30 days before the effective date of cancellation if we cancel due to loss of reinsurance coverage;

      (2) 10 days before the effective date of cancellation if we cancel for any other reason.

   b. If this policy is a new policy and has been in effect for less than 60 days, we may cancel for:

      (1) Loss of reinsurance, subject to d. below; or

      (2) Any other reason.

   c. If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

      (1) Nonpayment of premium;

      (2) Misrepresentation or fraud made by or with your knowledge in obtaining the policy, when renewing the policy, or in presenting a claim under the policy;

   (3) Acts or omissions by you that substantially change or increase the risk insured;

      (4) Determination by the Commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

      (5) You have acted in a manner which you knew or should have known was in violation or breach of a policy term or condition; or

      (6) Loss of reinsurance, subject to d. below.

   d. We may cancel due to loss of reinsurance which provides coverage to us for a significant portion of the underlying risk insured, but only if the Commissioner determines that such cancellation is justified.

3. We will mail or deliver our notice to the first Named Insured's and any loss payee's last mailing address known to us.

4. Notice of cancellation will state:

   a. The reason for cancellation; and

   b. The effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

Copyright, ISO Properties, Inc., 2001

Uniform Information Services, Inc.

6. If notice is mailed, a post office department certificate of mailing is proof of receipt of notice. However, if cancellation is for nonpayment of premium, a certificate of mailing is not required.

B. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any loss payee at least 45 days before the expiration date of this policy, except if:

   a. We have offered to issue a renewal policy; or

   b. You have failed to pay a premium due or any advance premium required by us for renewal.

2. If notice is mailed, a post office department certificate of mailing is proof of receipt of notice.

Copyright, ISO Properties, Inc., 2001

IL 02 86 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is amended as follows:

   **1.** Paragraph **1.** is replaced by the following:

     The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

   **2.** Paragraph **3.** is replaced by the following:

     We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

   **3.** Paragraph **5.** is replaced by the following:

     If this policy is cancelled, we will send the first Named Insured any pro rata premium re-fund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing shall be sufficient proof of notice.

Copyright, ISO Properties, Inc., 2001

IL 01 84 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH DAKOTA CHANGES – APPRAISAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART

**A.** Except as provided in Paragraph **B.** of this endorsement, the Appraisal Loss Condition is replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of the loss both parties may agree to an appraisal of the loss. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will retain our right to deny the claim.

**B.** The Appraisal Condition in Capital Assets Program Coverage Form (Output Policy), **OP 00 01,**

Paragraph **A.7.** Business Income And Extra Expense is replaced by the following:

**APPRAISAL**

If we and you disagree on the amount of net income and operating expense or the amount of the loss, both parties may agree to an appraisal of the loss. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of net income and operating expense and the amount of the loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will retain our right to deny the claim.

Copyright, ISO Properties, Inc., 2001

Uniform Information Services, Inc.

IL 02 32 09 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH DAKOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of **Cancellation** Common Policy Condition is replaced by the following:

   **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 20 days before the effective date of cancellation.

   After 60 days from the effective date of policy issuance a notice of cancellation may not be issued unless it is based upon at least one of the following reasons as stated in South Dakota law:

   (a) Nonpayment of premium;

   (b) Discovery of fraud or material misrepresentation made by or with the knowledge of the Named Insured in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

   (c) Discovery of acts or omissions on the part of the Named Insured which increase any hazard insured against;

   (d) The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued;

   (e) A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy

thereof which substantially increases any hazard insured against;

   (f) A determination by the director of insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of South Dakota;

   (g) Your violation or breach of any policy terms or conditions; or

   (h) Such other reasons as are approved by the director of insurance.

**B.** The following condition is added and supersedes any provisions to the contrary:

**NONRENEWAL**

   **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal not less than 60 days before:

   a. The expiration date; or

   b. The anniversary date if this is a continuous policy.

   **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, ISO Properties, Inc., 2002

COMMERCIAL AUTO
CA 00 01 10 01

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols 1, 2, 3, 4, 5 or 6 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

 Copyright, ISO Properties, Inc., 2000

b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. "Loss"; or

e. Destruction.

**SECTION II - LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

a. **Supplementary Payments**

In addition to the Limit of Insurance, we will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

 Copyright, ISO Properties, Inc., 2000

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

### b. Out-Of-State Coverage Extensions

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

## B. Exclusions

This insurance does not apply to any of the following:

### 1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

### 2. Contractual

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

### 3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

### 4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

### 5. Fellow Employee

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

### 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

Copyright, ISO Properties, Inc., 2000

a.  Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b.  After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8.  **Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9.  **Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

10.  **Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a.  Work or operations performed by you or on your behalf; and

b.  Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

(1)  When all of the work called for in your contract has been completed.

(2)  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11.  **Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a.  That are, or that are contained in any property that is:

(1)  Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2)  Otherwise in the course of transit by or on behalf of the "insured"; or

(3)  Being stored, disposed of, treated or processed in or upon the covered "auto";

b.  Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c.  After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1)  The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2)  The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1)  The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2)  The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

Copyright, ISO Properties, Inc., 2000

**12. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III - PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes Of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. **Loss Of Use Expenses**

      For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   Copyright, ISO Properties, Inc., 2000

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

   d. Any accessories used with the electronic equipment described in Paragraph c. above.

   Exclusions 4.c. and 4.d. do not apply to:

   a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

   b. Any other electronic equipment that is:

      (1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

      (2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

1. The most we will pay for "loss" in any one "accident" is the lesser of:

Copyright, ISO Properties, Inc., 2000

a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

### D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

1. **Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. **Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

Copyright, ISO Properties, Inc., 2000

4. **Loss Payment - Physical Damage Coverages**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. **General Conditions**

1. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. **Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. **Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. **No Benefit To Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. **Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

Copyright, ISO Properties, Inc., 2000

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico;

d. Canada; and

e. Anywhere in the world if:

(1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

(2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V - DEFINITIONS**

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from

premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in Paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

Copyright, ISO Properties, Inc., 2000

6. Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a. Equipment designed primarily for:

        (1) Snow removal;

        (2) Road maintenance, but not construction or resurfacing; or

        (3) Street cleaning;

    b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

    a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

Copyright, ISO Properties, Inc., 2000

COMMERCIAL AUTO
CA 00 38 12 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes in Liability Coverage**

The War exclusion under Paragraph **B. Exclusions of Section II - Liability Coverage** is replaced by the following:

**WAR**

"Bodily injury", "property damage" or "covered pollution cost or expense" arising directly or indirectly, out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B. Changes in Garagekeepers Coverage**

If the Garagekeepers Coverage endorsement or the Garagekeepers Coverage - Customers' Sound Receiving Equipment endorsement is attached, the following exclusion is added:

We will not pay for "loss" caused by or resulting from the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss":

**WAR**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C. Changes in Auto Medical Payments**

If the Auto Medical Payments Coverage endorsement is attached, the Exclusion **C.6.** is replaced by the following:

6. "Bodily injury", arising directly or indirectly, out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Changes in Uninsured/Underinsured Motorists Coverage**

If Uninsured and/or Underinsured Motorists Coverage is attached, then the following exclusion is added:

This insurance does not apply to:

**WAR**

1. "Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

CA 00 38 12 02                    © ISO Properties, Inc., 2003                    Page 1 of 2

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

E. **Changes In Personal Injury Protection Coverage**

1. If Personal Injury Protection, no-fault, or other similar coverage is attached, and:

   a. Contains, in whole or in part, a War exclusion, that exclusion is replaced by Paragraph 2.

   b. Does not contain a war exclusion, Paragraph 2. is added.

2. This insurance does not apply to:

   **WAR**

   "Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

F. **Changes In Single Interest Automobile Physical Damage Insurance Policy**

The War exclusion is replaced by the following:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© ISO Properties, Inc., 2003

Insert Form

# CA2054 1001

Employee Hired Autos

COMMERCIAL AUTO
CA 20 55 10 01

**THIS ENDORSEMENT CHANGE THE POLICY.  PLEASE READ IT CAREFULLY.**

## FELLOW EMPLOYEE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The Fellow Employee Exclusion contained in Section II - Liability Coverage does not apply.

COMMERCIAL AUTO
CA 23 61 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage - Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Any "bodily injury", "property damage", "personal injury", or "covered pollution cost or expense", as may be defined in any applicable Coverage Form or endorsement, arising directly or indirectly out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

CA 23 61 12 02          © ISO Properties, Inc., 2002         

B. With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage - Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Any "loss", loss of use, or rental reimbursement after "loss", arising directly or indirectly out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraph 1. describes the threshold used to measure the magnitude of an incident of an "other act of terrorism" and the circumstance in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

C. The following definitions are added:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a. The act resulted in aggregate losses in excess of $5 million; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

D. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense" that is otherwise excluded under this Coverage Form or any applicable endorsement.

# Insert Form

# CA9903 1293

Auto Medical Payments Coverage (CA,LA,MN,RI)

COMMERCIAL AUTO
CA 99 33 02 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEES AS INSUREDS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the **Section II – Liability Coverage**, Paragraph **A.1. Who Is An Insured** Provision:

Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

Hart Forms & Services
Reorder No. 14-8291

Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL AUTO
CA 99 48 09 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS – BUSINESS AUTO, MOTOR CARRIER AND TRUCKERS COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Liability Coverage** is changed as follows:

    **1.** Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

    **2.** With respect to the coverage afforded by Paragraph **A.1.** above, Exclusion **B.6.** Care, Custody Or Control does not apply.

**B. Changes In Definitions**

For the purposes of this endorsement, Paragraph **D.** of the **Definitions** Section is replaced by the following:

    **D.** "Covered pollution cost or expense" means any cost or expense arising out of:

        **1.** Any request, demand, order or statutory or regulatory requirement; or

        **2.** Any claim or "suit" by or on behalf of a governmental authority demanding

    that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

    "Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    **a.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    **b.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs **a.** and **b.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

Copyright, ISO Properties, Inc., 2002

COMMERCIAL AUTO
CA 01 60 02 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# IOWA CHANGES

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Conditions**

The following is added to the **Legal Action Against Us** Condition:

However, a judgment creditor shall have a right to sue us to recover an execution on a judgment returned unsatisfied against an "insured" to the same extent that such "insured" could have enforced the "insured's" claim against us had the "insured" paid such judgment, but we will not be liable for damages that are in excess of the applicable limit of insurance.

 Copyright, ISO Properties, Inc., 2002

POLICY NUMBER: CA 850500A

COMMERCIAL AUTO
CA 21 12 04 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# IOWA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Iowa, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 01/01/04 | Countersigned By |
|---|---|
| Named Insured: <br> BROIN AND ASSOCIATES INC | |

**SCHEDULE**

(Authorized Representative)

| LIMIT OF LIABILITY | |
|---|---|
| $1,000,000 | Each "Accident" |

The definition of "uninsured motor vehicle" in this endorsement applies in its entirety unless an "X" is entered below:

[ ] If an "X" is entered in this box Paragraph b. of the definition of "uninsured motor vehicle" does not apply.

[X] If an "X" is entered in this box only Paragraph b. of the definition of "uninsured motor vehicle" applies.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will pay under the coverage selected under this endorsement only if a. or b. below applies:

   a. The limit of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

Hart Forms & Services
Reorder No. 14-0643

**CA 21 12 04 01**   Copyright, ISO Properties, Inc., 2000   **Page 1 of 4**

a. The Named Insured and any "family members".

b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", in accordance with the procedure described in Paragraph **A.2.b.**

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. "Bodily injury" sustained by an individual Named Insured while "occupying" or struck by any vehicle owned by that Named Insured which is not a covered "auto".

5. Punitive or exemplary damages.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance For Uninsured And Underinsured Motorists Coverage shown in this endorsement.

2. With respect to damages resulting from an "accident" with an "uninsured motor vehicle", as defined in Paragraphs **F.3.a.**, **c.**, and **d.** of the definition of "uninsured motor vehicle", the Limit of Insurance shall be reduced by:

a. All sums paid or payable under any workers' compensation, disability benefits or similar law; and

b. All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage and any Liability Coverage Form.

We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The conditions of the policy are changed for Uninsured And Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this coverage form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

Copyright, ISO Properties, Inc., 2000

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a suit is brought.

c. A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of such vehicle.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

a. With respect to Paragraph **b.** of the definition of "uninsured motor vehicle", if any person or organization to or for whom we make payment under this coverage has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to prejudice them.

b. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid, less our pro rata share of expenses incurred in recovering those damages. However, with respect to Paragraph **b.** of the definition of "uninsured motor vehicle", we shall be entitled to recovery only after the "insured" has been fully compensated for damages.

Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" if we:

(1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle"; and

(2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

(2) We also have a right to recover the advance payment.

F. **Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the Iowa Motor Vehicle and Safety Responsibility Act; or

b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of the "accident" do not provide at least the amount an "insured" is legally entitled to recover as damages resulting from "bodily injury" caused by the "accident".

c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is occupying".

Copyright, ISO Properties, Inc., 2000

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

Copyright, ISO Properties, Inc., 2000

COMMERCIAL AUTO
CA 01 10 10 01

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MICHIGAN CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Michigan, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes in Liability Coverage**

**1.** For a covered "auto" subject to the Michigan no-fault law, Liability Coverage does not apply to "property damage" to a motor vehicle caused by an "accident" "occurring" in Michigan.

**2.** Paragraph a.(2)(d)(i) and (ii) of the **Who Is An Insured** Provision in the Garage Coverage Form is replaced by the following:

Your customers, if your business is shown in the Declarations as an "auto" dealership, but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

**B. Changes in Physical Damage Coverage**

Any Physical Damage Coverage and any Rental Reimbursement Coverage provided by the policy do not apply to the extent that Property Protection Coverage benefits are available as required by Michigan law.

**C. Changes in Conditions**

**1.** The **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto, Truckers, Motor Carrier and Garage Coverage Forms is amended to:

**a.** Revise Paragraph **a.** to allow you, or anyone on your behalf, to provide the notice necessary to satisfy this Condition.

**b.** Add the following paragraph:

Failure to give any notice required by this Condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

**2.** The **Duties In The Event Of Loss** Condition in the Business Auto Physical Damage Coverage Form is amended to:

**a.** Revise Paragraph **a.** to allow you, or anyone on your behalf, to provide the notice necessary to satisfy this Condition.

**b.** Add the following paragraph:

Failure to give any notice required by this Condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

Copyright, ISO Properties, Inc., 2000

# Insert Form

# CA0217 0394

Michigan Changes - Cancellation and Nonrenewal

POLICY NUMBER:   CA 850500A

**COMMERCIAL AUTO**
**CA 21 31 07 03**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MICHIGAN UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Michigan, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 01/01/04 | Countersigned By |
|---|---|
| Named Insured: BROIN AND ASSOCIATES INC | (Authorized Representative) |

### SCHEDULE

| LIMIT OF INSURANCE | |
|---|---|
| $1,000,000 | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will pay under this coverage only if a. or b. below applies:

   a. The limit of any applicable liability bonds or policies have been exhausted by payment of judgements or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgement for damages arising out of a "suit" brought without our written consent is not binding on us.

CA 21 31 07 03                    © ISO Properties, Inc., 2002                    Page 1 of 4

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto", or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", in accordance with the procedures described in Paragraph **A.2.b.**

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while " "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while ' "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form, any Liability Coverage Form, or any Medical Payments Coverage Endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

**E. Changes In Conditions**

The conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

© ISO Properties, Inc., 2002

   b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this coverage form is provided:

     (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

     (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

   c. A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle".

**3.** The **Legal Action Against Us** provision is replaced by the following:

   a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

   b. Any legal action against us under this Coverage Form must be brought within three years after the date of "accident". However, this paragraph **3.b.** does not apply to an "insured" if, within three years after the date of the "accident":

     (1) We and the "insured" agree to arbitration in accordance with this endorsement; or

     (2) The "insured" has filed an action for "bodily injury" against the owner or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and such action is:

       (a) Filed in a court of competent jurisdiction; and

       (b) Not barred by the applicable statute of limitations.

   In the event that the three year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

**4. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement with 30 days after receipt of notification.

   If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

   b. We also have a right to recover the advance payment.

5. The following condition is added:

**ARBITRATION**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged:

b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged but that sum is less than the Limit of Insurance of this coverage;

c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no direct physical contact with the hit-and-run vehicle, the facts of the "accident" must be corroborated by competent evidence, other than the testimony of any person having a claim under this or any similar insurance as the result of such "accident".

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

© ISO Properties, Inc., 2002

POLICY NUMBER:  CA 850500A

COMMERCIAL AUTO
CA 22 20 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Michigan, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SCHEDULE**

| Coverage | Limit Of Insurance |
|---|---|
| Medical expenses | No specific dollar amount |
| Funeral expenses | Up to $1,750 per person |
| Work loss | Up to $3,898* for any 30 day period |
| Replacement services | $20 per day maximum |
| Survivors loss benefits consisting of income loss benefits and replacement services | Up to $3,898* for any 30 day period subject to a $20 per day maximum for replacement services. |
| * Or whatever maximum amount is established by the Michigan Insurance Commissioner for accidents occurring on or after the date of the change in maximum. | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## A. Coverage

We will pay personal injury protection benefits to or for an "insured" who sustains "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of an "auto" as an "auto". These benefits are subject to the provisions of Chapter 31 of the Michigan Insurance Code. Personal Injury Protection benefits consist of the following benefits:

### 1. Medical Expenses

Reasonable and necessary medical expenses for an "insured's" care, recovery, or rehabilitation. Charges for a hospital room are limited to those customary for a semi-private room, unless special or intensive care is required.

### 2. Funeral Expenses

Reasonable funeral and burial expense.

### 3. Work Loss

Up to 85% of an "insured's" actual loss of income from work. We will pay a higher percentage if the "insured" gives us reasonable proof that net income is more than 85% of gross income. The most we will pay in any 30 day period for this benefit is the amount shown in the Schedule or Declarations unless another amount is established by law. Any income an "insured" earns during the 30 day period is included in determining the income benefit we will pay. This benefit is payable for loss sustained during the 3 years after the accident. It does not apply after an "insured" dies. We will prorate this benefit for any period less than 30 days.

### 4. Replacement Services

Reasonable expenses for obtaining services to replace those an "insured" would normally have performed without pay for himself or herself or dependents. This benefit is payable for loss sustained during the 3 years after the accident. It does not apply after an "insured" dies.

### 5. Survivors loss benefits consisting of:

#### a. Income Loss

The contributions a deceased "insured's" spouse and dependents would have received, as dependents, if the "insured" had not died as a result of the "accident".

#### b. Replacement Services

Reasonable expenses for obtaining services to replace those a deceased "insured" would have performed without pay for his or her spouse and dependents.

Copyright, ISO Properties, Inc., 2000

The most we will pay in any 30 day period for the total of survivors loss benefits is the amount shown in the schedule unless another amount is established by law. Any income an "insured" earns during the 30 day period is included in determining the income benefits we will pay. These benefits are payable during the 3 years after the "accident", but do not apply to any loss or expense incurred after an "insured" dies. We will prorate these benefits for any period of less than 30 days.

Survivors loss benefits are payable during the 3 years after the "accident". A deceased "insured's" spouse must have either resided with or been dependent on the "insured" at the time of death. The benefits cease for a spouse at remarriage or death. Any other dependent qualifies for benefits if, at the time of the "insured's" death, the person is under age 18, physically or mentally unable to earn a living or a full-time student.

**B. Who Is An Insured**

1. You or any "family member".

2. Anyone else who sustains "bodily injury":

   a. While "occupying" a covered "auto", or

   b. As the result of an "accident" involving any other "auto" operated by you or a "family member" if that "auto" is a covered "auto" under the policy's Liability Coverage, or

   c. While not "occupying" any "auto" as a result of an "accident" involving a covered "auto".

**C. Exclusions**

We will not pay personal injury protection benefits for "bodily injury":

1. To anyone causing intentional "bodily injury" to himself, herself or anyone else.

2. To anyone using an "auto" he or she has taken unlawfully, unless that person reasonably believed he or she was entitled to use the "auto".

3. To anyone not "occupying" an "auto", if the "accident" takes place outside Michigan. This exclusion does not apply to you or any "family member".

4. To you while "occupying" or struck by any "auto" owned or registered by you which is not a covered "auto".

5. To the owner or registrant of an "auto" for which the coverage required by the Michigan no-fault law is not in effect.

6. To anyone entitled to Michigan no-fault benefits as a Named Insured under another policy.

This exclusion does not apply to you or anyone "occupying" a motorcycle.

7. To anyone entitled to Michigan no-fault benefits as a "family member" under another policy. This exclusion does not apply to you or any "family member" or anyone "occupying" a motorcycle.

8. To anyone while "occupying" or struck by an "auto" (other than a covered "auto") operated by you or a "family member" if the owner or registrant has the required Michigan no-fault coverage. This exclusion does not apply to you or any "family member".

9. To anyone while "occupying" an "auto" located for use as a residence or premises.

10. To anyone while "occupying" a public "auto" (other than a covered "auto") for which the required Michigan no-fault coverage is in effect. This exclusion does not apply to "bodily injury" to you or a "family member" while a passenger in a:

    a. School bus;

    b. Certified common carrier;

    c. Bus operated under a government sponsored transportation program;

    d. Bus operated by or servicing a non-profit organization;

    e. Bus operated by a watercraft, bicycle, or horse livery used only to transport passengers to or from a destination point; or

    f. Taxicab.

11. To you or any "family member" while "occupying" an "auto" which is owned or registered by your or any "family member's" employer and for which the required Michigan no-fault coverage is in effect.

12. To anyone while "occupying" an "auto" for which the owner or registrant is not required to provide Michigan no-fault benefits and which is operated by you or a "family member" outside Michigan. This exclusion does not apply to you or a "family member"; nor does it apply under medical, or funeral expense benefits.

13. To any person resulting from the ownership, operation, maintenance or use of a parked "auto". This exclusion does not apply if:

    a. The "auto" was parked in such a way as to cause unreasonable risk of the "bodily injury", or

    b. The "bodily injury" results from physical contact with:

Copyright, ISO Properties, Inc., 2000

(1) Equipment permanently mounted on the "auto" while the equipment is being used, or

(2) Property being lifted onto or lowered from the "auto", or

c. The "bodily injury" is sustained while "occupying" the "auto".

However, Exceptions b. and c. to this exclusion do not apply to any "employee" who has Michigan workers' disability compensation benefits available and who sustains "bodily injury" in the course of employment while loading, unloading, or doing mechanical work on an "auto", unless the injury arises from the use or operation of another vehicle.

14. To you or any "family member" while "occupying" a motorcycle if the owner, registrant or operator of the "auto" involved in the "accident" has the required Michigan no-fault coverage.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made, vehicles involved in the "accident" or insurers providing no-fault benefits, the most we will pay for "bodily injury" for each "insured" injured in any one "accident" are the amounts shown in the Schedule.

2. Any amount payable under this insurance shall be reduced by any benefits paid, payable or required to be provided by state or federal law except any benefits paid, payable or required to be provided by Medicare, provided:

   a. The benefits serve the same purpose as Personal Injury Protection benefits; and

   b. The benefits are provided or required to be provided as the result of the same "accident" for which this insurance is payable. However, this insurance shall not be reduced if any amount of workers' compensation benefits that are required to be provided are not available to the "insured".

3. Any amount payable under this insurance shall be reduced by any deductible you elect. However, the deductible applies only to you and any "family member".

**E. Changes In Conditions**

The conditions are changed for Personal Injury Protection as follows:

1. The **Transfer Of Rights Of Recovery Against Others To Us** Condition is replaced by the following:

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, and that other person is an uninsured motorist, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** is amended by the addition of the following:

If requested by us, the "insured" shall furnish a sworn statement of earnings since the "accident" and for a reasonable time prior to the "accident".

3. **Legal Action Against Us** is amended by the addition of the following:

No claimant may bring a legal action for personal injury protection benefits against us more than a year after the "accident". There are two exceptions. The action may be brought if we have been given notice within a year after the "accident" or have made a payment of benefits. In these cases, a claimant may bring the action within a year after the most recent payment. However, the claimant may not recover benefits for any part of a loss incurred more than a year before the action was brought.

4. The following conditions are added:

**REIMBURSEMENT AND TRUST**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid. This requirement is subject to any applicable limitations of Michigan law.

**COORDINATION AND NON-DUPLICATION**

a. If an "insured" is entitled to personal injury protection benefits under more than one policy, the maximum recovery under all policies shall not exceed the amount payable under the policy providing the highest dollar limit.

b. No person may recover duplicate benefits for the same expenses or loss.

**PREMIUM RECOMPUTATION**

Chapter 31 of the Michigan Insurance Code places certain limitations on a person's right to sue for damages. The premium for the policy reflects these limitations. If a court from which there is no appeal declares any of these

limitations unenforceable we will have the right to recompute the premium. The rates we use to recompute the premium will be subject to review by the Commissioner of Insurance. If you choose to delete any coverage as the result of the court's decision, we will compute any refund of premium on a pro rata basis.

**F. Additional Definitions**

As used in this endorsement:

1. "Auto" means a motor vehicle or trailer operated or designed for use on public roads but does not include a vehicle operated by muscular power, a vehicle with fewer than three wheels, a motorcycle, or a farm tractor or other implement of husbandry which is not subject to the registration requirements of the Michigan Vehicle Code. This definition replaces the definition in the policy.

2. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

3. "Occupying" means in, upon, getting in, on, out or off.

Copyright, ISO Properties, Inc., 2000

# Insert Form

# CA2224 0994

Michigan Property Protection Coverage

**Insert Form**

# CA0138 0897

MN CHANGES

# Insert Form

# CA0218 0698

## Minnesota Changes - Cancellation and Nonrenewal

POLICY NUMBER: CA 850500A

COMMERCIAL AUTO<br>CA 21 24 09 97

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINNESOTA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Minnesota, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

### SCHEDULE

| | Limit | | |
|---|---|---|---|
| Uninsured Motorists Coverage | $ | 1,000,000 | Each "Accident" |
| Underinsured Motorists Coverage | $ | 1,000,000 | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

### A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought against an uninsured or underinsured motorist is not binding on us unless we have:

   a. Received reasonable notice of the commencement of the "suit" resulting in judgment; and

   b. Had a reasonable opportunity to protect our interests in the "suit".

### B. Who Is An Insured

1. You.

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

### C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled with the owner or operator of an "uninsured motor vehicle" without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" under Uninsured Motorists Coverage, if that "bodily injury" is sustained by:

   a. You while "occupying" or when struck by a vehicle owned by you that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

Hart Forms & Services<br>Reorder No. 14-J013

CA 21 24 09 97

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 4

4. "Bodily injury" under Underinsured Motorists Coverage, if that "bodily injury" is sustained by:

   a. You while "occupying" or when struck by a vehicle owned by you that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so. However, this exclusion does not apply to a "family member" who is not identified by name in any other contract for a plan of reparation security complying with the Minnesota no-fault insurance act, while using a covered "auto" which is owned by you.

6. Punitive or exemplary damages.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident":

   a. With an "uninsured motor vehicle" is the limit of Uninsured Motorists Coverage shown in the Schedule.

   b. With an "underinsured motor vehicle" is the limit of Underinsured Motorists Coverage shown in the Schedule.

We will apply the limit of liability for each of these coverages as shown in the Schedule to provide separate limits required by law for uninsured and underinsured "bodily injury" liability.

2. Any amounts otherwise payable for damages under this insurance shall be reduced by all sums paid or payable or which would be paid or payable except for the application of a deductible under Personal Injury Protection applicable to the same element of loss.

3. We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form, any Liability Cov-

erage Form, Medical Payments Coverage Endorsement attached to this Coverage Part.

## E. Changes In Conditions

The conditions are changed for Uninsured Motorists Coverage and Underinsured Motorists Coverage as follows:

1. The reference in **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance — Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms to "other applicable insurance" applies only to other collectible uninsured motorists insurance and is replaced by the following:

   a. With respect to coverage we provide when a covered "auto" you own is involved in an "accident", only:

     (1) The Limit Of Insurance for Uninsured Motorists Coverage applicable to that "auto" will apply for damages for which the owner or operator of the "uninsured motor vehicle" is legally responsible.

     (2) The Limit Of Insurance for Underinsured Motorists Coverage applicable to that "auto" will apply for damages for which the owner or operator of the "underinsured motor vehicle" is legally responsible.

   b. If an "insured" sustains "bodily injury" while "occupying" a vehicle not owned by that person or while not "occupying" any vehicle, the following priorities of recovery apply:

| First Priority | The policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| Second Priority | Any Coverage Form or policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the "insured" as a named insured or family member. |

     (1) Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy.

     (2) Where there is applicable insurance available under the first priority:

Copyright, Insurance Services Office, Inc., 1997
CA 21 24 09 97

(a) The Limit Of Insurance applicable to the vehicle the "insured" was "occupying", under the Coverage Form or policy in the first priority, shall first be exhausted; and

(b) If there is other applicable insurance available under one or more policies or provisions of coverage:

The maximum recovery in the second priority under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.

If the coverage under this coverage form is provided:

(i) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(ii) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

(3) We will pay only our share of the "loss", not to exceed our share of the maximum recovery. Our share is the proportion that our Limit Of Insurance bears to the total of all applicable limits in the same level of priority.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

For an "underinsured motor vehicle", **Duties In The Event Of Accident, Claim, Suit Or Loss** is also changed by adding the following:

a. Promptly notify us in writing of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle". Such notice shall:

(1) Identify the "insured", the owner or driver of the "underinsured motor vehicle", and the insurer of the "underinsured motor vehicle";

(2) Disclose the limits of the automobile liability insurance available to the owner or driver of the "underinsured motor vehicle"; and

(3) Disclose the agreed upon amount of the tentative settlement; and

b. Allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**3. Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

a. If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

b. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

c. For an "underinsured motor vehicle", Paragraph **3.a.** of the Transfer Of Rights Of Recovery Against Others To Us Condition does not apply if:

(1) We have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

(2) We fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of such notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of written notification:

(1) That payment will be separate from an amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

(2) We also have a right to recover the advance payment.

 Copyright, Insurance Services Office, Inc., 1997

d. Our rights under Paragraph **3.a.** of this condition do not apply against any person or organization insured under this or any other Coverage Form we issue with respect to the same "accident" or "loss".

**4.** The following condition is added:

**ARBITRATION**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or trailer:

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law

where a covered "auto" is principally garaged;

b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying", or must cause an "accident" resulting in "bodily injury" to an "insured" without hitting a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Designed for use mainly off public roads while not on public roads; or

c. That is an "underinsured motor vehicle".

**4.** "Underinsured motor vehicle" means a land motor vehicle or trailer for which a bodily injury liability bond or policy applies at the time of the "accident" in limits equal to or greater than the minimum limits specified by the Minnesota No-Fault Automobile Insurance Act but its limit for "bodily injury" liability is not enough to pay the full amount the "insured" is legally entitled to recover as damages caused by the "accident".

However, "underinsured motor vehicle" does not include any vehicle:

a. For which a liability bond or policy applies at the time of the "accident" but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the Minnesota No-Fault Automobile Insurance Act.

b. Designed for use mainly off public roads while not on public roads.

c. That is an "uninsured motor vehicle".

   Copyright, Insurance Services Office, Inc., 1997   CA 21 24 09 97

POLICY NUMBER: CA 850500A

COMMERCIAL AUTO
CA 22 25 02 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Minnesota, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement.

| Endorsement Effective: 01/01/04 | Countersigned By |
|---|---|
| Named Insured:<br><br>BROIN AND ASSOCIATES INC | |

(Authorized Representative)

**SCHEDULE**

| In consideration of an increase in premium, the following Personal Injury Protection Coverage option applies as indicated below or in the Declarations: |
|---|
| [  ]  The Named Insured elects to add together 2 or more Personal Injury Protection Coverages. (Refer to Paragraph **3.** of the Limit Of Insurance Provision.) |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## A. Coverage

The Company will pay, in accordance with the Minnesota No-Fault Automobile Insurance Act, Personal Injury Protection benefits incurred with respect to "bodily injury" sustained by an "insured" caused by an "accident" arising out of the maintenance or use of a "motor vehicle" as a vehicle, or through being struck by a motorcycle. These Personal Injury Protection benefits consist of the following:

**1. Medical Expenses**

Means all reasonable expenses incurred for necessary:

a. Medical, surgical, x-ray, optical, dental, chiropractic and rehabilitative services, including prosthetic devices;

b. Prescription drugs;

c. Ambulance and all other transportation expenses incurred in traveling to receive other covered medical expense benefits;

d. Sign interpreting and language translation services, other than such services provided by a member of the "insured's" family, related to the receipt of medical

expenses provided under Paragraph **A.1.** of this provision; and

e. Hospital, extended care and nursing services, including necessary remedial treatment and services recognized and permitted under the laws of Minnesota for an "insured" who relies upon spiritual means through prayer alone for healing in accordance with his or her religious belief; however, it does not include expenses in excess of those for a semi-private room, unless more intensive care is medically required.

**2. Work Loss**

Means:

a. 85% of loss of gross income resulting from the "insured's" inability to work on a regular basis including the costs incurred by an "insured" who is self-employed in hiring substitute employees to perform tasks which are necessary to maintain his or her income, which he or she normally performs himself or herself, and which he or she cannot perform because of his or her injury; or

Hart Forms & Services
Reorder No. 14-S169

  Copyright, Insurance Services Office, Inc., 1999

b.  Lost unemployment benefits in an amount equal to the unemployment benefits otherwise payable, if the "insured":

(1)  Is unemployed at the time of the injury and is receiving or is eligible to receive unemployment benefits; and

(2)  Loses eligibility for unemployment benefits because of his or her inability to work caused by injury;

reduced by any income from work actually performed by the "insured", or by any income he or she would have earned in available appropriate substitute work which he or she was capable of performing but unreasonably failed to undertake.

### 3. Essential Services Expenses

Expenses reasonably incurred during a period commencing 8 days after the date of the accident and during the "insured's" lifetime, in obtaining usual and necessary substitute services in lieu of those that, had he or she not been injured, he or she would have performed not for income but for the direct benefit of himself or herself or his or her household; if the non-fatally injured "insured" normally, as a full time responsibility, provides care and maintenance of a home, with or without children, the benefit is the reasonable value of such care and maintenance, if greater than the expense incurred.

### 4. Funeral Expenses

Reasonable expenses for professional funeral and burial services including expense for cremation, or delivery under the Minnesota Uniform Anatomical Gift Act.

### 5. Survivors' Loss

Means:

a.  "Loss", in the event of the death of an "insured" occurring within one year from the date of the "accident", of contributions of money or tangible things of economic value, not including services, that his or her surviving dependents would have received from him or her for their support during their dependency had he or she not suffered the fatal "bodily injury", and

b.  Expenses reasonably incurred by surviving dependents after the death of an "insured" in obtaining ordinary and necessary substitute services in lieu of those he or she would have performed for their benefit had he or she not suffered the fatal "bodily injury"; minus expenses of the surviving dependents avoided by reason of such death,

provided that the dependency of the surviving spouse shall be terminated in the event such surviving spouse remarries or dies, and the dependency of a child who is not physically or mentally incapacitated from earning shall be terminated in the event he or she attains majority, marries or becomes otherwise emancipated, or dies.

### B. Who Is An Insured

1.  The Named Insured or any "family member" who sustains "bodily injury" while "occupying" a "motor vehicle", or while a pedestrian as a result of an "accident" involving any "motor vehicle" or motorcycle.

2.  Any other person who sustains "bodily injury" while "occupying" the "insured motor vehicle", or while a pedestrian as a result of an "accident" involving the "insured motor vehicle".

3.  Any other person who sustains "bodily injury" while "occupying" a "motor vehicle" not owned by, but operated by the Named Insured or "family member", other than a public or livery conveyance, if the "bodily injury" results from the operation of the "motor vehicle" by the Named Insured or "family member".

### C. Exclusions

We will not pay Personal Injury Protection benefits for "bodily injury":

1.  Sustained by any "family member" if such "family member" is entitled to Personal Injury Protection Coverage as a self-insured or as a Named Insured under the terms of any other Coverage Form or policy with respect to such coverage.

2.  Sustained by any person, other than the Named Insured or "family member", if such person is entitled to Personal Injury Protection Coverage as a self-insured or as a Named Insured or "family member" under the terms of any other Coverage Form or policy with respect to such coverage.

3.  Sustained by any person arising out of the maintenance or use of a "motor vehicle":

a.  Being used in the business of transporting persons or property, or

b.  Furnished by the employer of the Named Insured or "family member",

if with respect to such vehicle the security required by the Minnesota No-Fault Automobile Insurance Act is in effect, provided that such "bodily injury" is sustained while not "occupying" another involved "motor vehicle"; however, this exclusion does not apply to (i) the

     Copyright, Insurance Services Office, Inc., 1999

"insured motor vehicle", (ii) a commuter van as defined in the Minnesota No-Fault Automobile Insurance Act, (iii) a vehicle being used to transport children to school or to a school sponsored activity, (iv) a vehicle being used to transport children as part of a family or group family day care program, (v) any bus, other than a bus included as a vehicle described in (ii), (iii), or (iv) above, while in operation within the state of Minnesota as to any Minnesota resident who is an insured as defined in the Minnesota No-Fault Automobile Insurance Act, or (vi) a passenger in a taxi.

4. To any benefits any person would otherwise be entitled to receive hereunder for "bodily injury" intentionally caused by such person or arising out of his or her intentionally attempting to cause "bodily injury", and, if any person dies as a result of intentionally causing or attempting to cause "bodily injury" to himself or herself, his or her survivors are not entitled to any survivors' loss benefits.

5. Sustained by any person in the course of an officiated racing or speed contest, or in practice or preparation therefor, other than a rally held in whole or in part upon public roads.

6. Sustained by any person if such injury arises out of conduct within the course of a business of repairing, servicing, or otherwise maintaining "motor vehicles" unless such conduct occurs off the business premises.

7. Sustained by any person if such injury arises out of conduct in the course of loading or unloading any "motor vehicle" unless the conduct occurs while such person is "occupying" such "motor vehicle".

8. Sustained by any person while "occupying" a motorcycle.

9. To Personal Injury Protection benefits otherwise payable in the event that a lapse of one year or more occurs in the period of disability and medical treatment of an "insured" as a result of any one "accident".

10. Sustained by any person, other than the Named Insured or any "family member", arising out of the maintenance or use by such person of a "motor vehicle" without a good faith belief that he or she is legally entitled to use such "motor vehicle".

11. Sustained by any person, other than the Named Insured or any "family member", while a pedestrian through being struck by the "insured" "motor vehicle", if the "accident" occurs outside the State of Minnesota.

12. Sustained by any person arising out of the maintenance or use of a "motor vehicle" while located for use as a residence or premises.

13. Due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing.

14. Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

15. With respect to work loss, essential services expenses, and survivors' loss benefits, sustained by any person, other than the Named Insured or "family member", while "occupying" any "motor vehicle", not owned by the Named Insured or "family member", which is being operated by the Named Insured or "family member".

16. Sustained by any person, other than the Named Insured or any "family member", while "occupying" a vehicle which is regularly used in the course of the business of transporting persons or property and which is one of five or more vehicles under common ownership or a vehicle owned by a government other than the State of Minnesota, its political subdivisions, municipal corporations, or public agencies, if the "accident" occurs outside the State of Minnesota.

**D. Limit Of Insurance**

1. Except as provided in Paragraph 3., regardless of the number of persons insured, policies or plans of self-insurance applicable, premiums paid, claims made or "insured motor vehicles" to which this coverage applies, our liability for Personal Injury Protection benefits with respect to "bodily injury" sustained by any one "insured" in any one "motor vehicle" "accident" shall not exceed $40,000 in the aggregate and subject to such aggregate:

   a. The maximum amount payable for "medical expenses" shall not exceed $20,000.

   b. The maximum aggregate amount payable for work loss, essential services expenses, funeral expenses and survivors' loss benefits shall not exceed $20,000. Subject to this maximum aggregate:

      (1) The maximum amount payable for work loss shall not exceed $250.00 per week.

      (2) The maximum amount payable for essential services expenses shall not exceed $200.00 per week.

      (3) The maximum amount payable for funeral expenses shall not exceed $2,000.

      (4) The maximum amount payable for survivors' loss benefits:

(a) With respect to Paragraph **A.5.a.** of the definition of survivors' loss benefits shall not exceed $200.00 per week; and

(b) With respect to Paragraph **A.5.b.** of the definition of survivors' loss benefits shall not exceed $200.00 per week.

2. Any amount payable by the Company under the terms of this coverage shall be reduced by:

a. Any amounts paid, payable or required to be provided on account of such "bodily injury" under any workers' compensation law; except that if the "accident" involves a "motor vehicle" used in a "ridesharing arrangement", this coverage shall be primary.

b. The amount of any deductible applicable to "medical expenses" set forth in this Coverage Form, but only with respect to "bodily injury" sustained by the Named Insured or by a "family member", provided that, if two or more such persons sustain "bodily injury" in the same "motor vehicle" "accident", the total amount of the deductible applicable to all of them shall not exceed the deductible amount stated in this Coverage Form, and such amount shall be allocated equally among them.

c. The amount of any deductible applicable to work loss set forth in this Coverage Form, but only with respect to "bodily injury" sustained by the Named Insured or any "family member".

3. If the Schedule or Declarations indicates that the Named Insured elected to add together two or more Personal Injury Protection Coverages, regardless of the number of persons insured, premiums paid or claims made, our liability for Personal Injury Protection benefits with respect to "bodily injury" sustained by any one "insured" in any one "motor vehicle" "accident" shall not exceed $40,000 in the aggregate, per "insured motor vehicle", and subject to each such aggregate:

a. The maximum amount payable for "medical expenses" shall not exceed $20,000.

b. The maximum amount payable for work loss, essential services expenses, funeral expenses and survivors' loss benefits shall not exceed $20,000 provided that if there is more than one "insured motor vehicle", the aggregate amount applicable to one "insured motor vehicle" shall be exhausted before essential services expenses or survivors' loss benefits shall be payable

under the aggregate which applies to any other "insured motor vehicle". Subject to this maximum aggregate:

(1) The maximum amount payable for work loss shall not exceed $250.00 per week.

(2) The maximum amount payable for essential services expenses shall not exceed $200.00 per week.

(3) The maximum amount payable for funeral expenses shall not exceed $2,000.

(4) The maximum amount payable for survivors' loss benefits:

(a) With respect to Paragraph **A.5.a.** of the definition of survivors' loss" benefits shall not exceed $200.00 per week; and

(b) With respect to Paragraph **A.5.b.** of the definition of survivors' loss" benefits shall not exceed $200.00 per week.

**E.  Changes In Conditions**

The Conditions are changed for Personal Injury Protection as follows:

**1.  Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

a. In the event of any "accident", written notice containing particulars sufficient to identify the "insured", and also reasonably obtainable information respecting the time, place and circumstances of the "accident" shall be given by or on behalf of each "insured" to us or any of our authorized agents within six months from the date of the "accident". Failure to provide such written notice shall not render an "insured" ineligible to receive benefits unless actual prejudice is shown by us and then only to the extent of the prejudice. If an "insured", his or her legal representative or his or her surviving dependents shall institute legal action to recover damages for "bodily injury" against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such "insured", his or her legal representative or his or her surviving dependents.

b. As soon as practicable, the "insured" or someone on his or her behalf shall give us written proof of claim, under oath if required, including full particulars of the na-

Copyright, Insurance Services Office, Inc., 1999

ture and extent of the "bodily injury", treatment and rehabilitation received and contemplated, and such other information as may assist us in determining the amount due and payable. The "insured" shall submit to physical and mental examination by physicians selected by us when and as often as we may reasonably require. An "insured" who has undertaken a procedure or treatment for rehabilitation or a course of rehabilitative occupational training, other than medical rehabilitation procedure or treatment, shall notify us that he or she has undertaken the procedure, treatment or training within 60 days after a rehabilitation expense exceeding $1,000 has been incurred for the procedure, treatment, or training, unless we know or have reason to know of the undertaking. If the "insured" does not give the required notice within the prescribed time, we are responsible only for $1,000 or the expense incurred after the notice is given and within 60 days before the notice, whichever is greater, unless failure to give timely notice is the result of excusable neglect.

**2. Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

Subject to any applicable limitations set forth in the Minnesota No-Fault Automobile Insurance Act, in the event of any payment under this coverage, we are subrogated to the rights of the person to whom or for whose benefit such payments were made, to the extent of such payments, and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

**3. Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is amended by the following:

In the event the "insured" has other similar insurance including self-insurance available and applicable to the "accident", we shall not be liable for a greater proportion of any loss to which this coverage applies than the Limit Of Insurance hereunder bears to the sum of the applicable Limits Of Insurance of this coverage and such other insurance.

However, if the driver or occupant of a "motor vehicle" sustains "bodily injury" while using the vehicle in the business of transporting persons or property, this insurance is primary.

**4.** The **Two Or More Coverage Forms Or Policies Issued By Us** Policy Condition is replaced by the following:

If the Schedule indicates that the Named Insured elected to add together two or more Personal Injury Protection Coverages, the Two Or More Coverage Forms Or Policies Issued By Us provision in the Policy Conditions section of the Coverage Form does not apply to coverage afforded under this endorsement. However, no one will be entitled to receive duplicate payments for the same elements of "loss".

**5.** The following Conditions are added:

**COORDINATION, NON-DUPLICATION AND PRIORITY OF PAYMENTS**

**a.** No "insured" shall recover duplicate benefits for the same elements of "loss" under this or any similar insurance including self-insurance.

**b.** If the Schedule indicates that the Named Insured elected to add together two or more Personal Injury Protection Coverages and if "essential services expenses" or "survivors' loss" benefits are payable under more than one Coverage Form or policy, the aggregate applicable to these benefits under any one Coverage Form or policy must be exhausted before these benefits are payable under another Coverage Form or policy.

**c.** Any amount payable under any Uninsured Motorists Coverage afforded under this Coverage Form or policy shall be reduced by the amount of any Personal Injury Protection benefits paid or payable or which would be paid or payable but for the application of a deductible under this or any other motor vehicle insurance Coverage Form or policy because of "bodily injury" sustained by an "insured".

**REIMBURSEMENT AND TRUST**

Subject to any applicable limitations set forth in the Minnesota No-Fault Automobile Insurance Act, in the event of any payment to any person under this coverage:

**a.** We shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the "bodily injury" because of which such payment is made; and we shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such "bodily injury", his or

her agent, his or her insurer or a court having jurisdiction in the matter.

b. Such person shall hold in trust for our benefit all rights of recovery which he or she shall have against such other person or organization because of such "bodily injury".

c. Such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such right; and

d. Such person shall execute and deliver to us instruments and papers as may be appropriate to secure the rights and obligations of such person and us established by this provision.

**CONSTITUTIONALITY CLAUSE**

The premium for and the coverages of the policy have been established in reliance upon the provisions of the Minnesota No-Fault Automobile Insurance Act. In the event a court of competent jurisdiction declares, or enters a judgment the effect of which is to render the provisions of such act invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the policy and the provisions of this endorsement shall be voidable or subject to amendment at our option.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means the spouse or any person related to the Named Insured by blood, marriage or adoption, including a minor in the custody of the Named Insured, spouse or such related person who is a resident of the same household as the Named Insured

whether or not temporarily residing elsewhere.

2. "Insured motor vehicle" means a "motor vehicle" with respect to which:

a. The "bodily injury" liability insurance of the Coverage Form or policy applies and for which a specific premium is charged, and

b. The "named insured" is required to maintain security under the provisions of the Minnesota No-Fault Automobile Insurance Act.

3. "Motor vehicle" means every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which:

a. Is required to be registered pursuant to Minnesota Statutes, Chapter 168, and

b. Is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, and includes a trailer with one or more wheels, when the trailer is connected to or being towed by a "motor vehicle".

4. "Occupying" means in or upon, entering into or alighting from.

5. "Ridesharing arrangement" means the transportation of persons, for a fee or otherwise, in a "motor vehicle" when the transportation is incidental to another purpose of the driver. The term includes the forms of shared transportation known as carpools, commuter vanpools and buspools whether or not furnished by an employer. It does not include transportation of employees by an employer from one place to another.

COMMERCIAL AUTO
CA 01 23 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH DAKOTA CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, South Dakota, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Physical Damage Coverage**

1. The "Diminution in Value" exclusion does not apply.

2. The Limit of Insurance provision with respect to repair or replacement resulting in better than like kind or quality is replaced by the following, and supersedes any provision to the contrary:

   We may deduct for betterment from the amount we pay for the "loss" only if the repair or replacement results in an increase in the fair market value of the vehicle.

   Betterment as used in this provision means the difference between:

   a. The fair market value of the vehicle before the "loss"; and

   b. The fair market value of the vehicle after repair or replacement.

Copyright, ISO Properties, Inc., 2000

POLICY NUMBER: CA 850500A

COMMERCIAL AUTO
CA 21 41 04 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH DAKOTA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 01/01/04 | Countersigned By |
|---|---|
| Named Insured: BROIN AND ASSOCIATES INC | |
| | (Authorized Representative) |

**SCHEDULE**

| UNINSURED MOTORISTS COVERAGE | $1,000,000 | Limit EACH "ACCIDENT" |
|---|---|---|
| UNDERINSURED MOTORISTS COVERAGE | $1,000,000 | EACH "ACCIDENT" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured" or "underinsured motor vehicle".

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered "auto" is principally garaged, we will pay only after all liability bonds or policies have been exhausted by payment of judgments or settlements.

3. No judgment for damages arising out of a "suit" brought against, or settlement entered into with, the owner or operator of an "uninsured motor vehicle" or an "underinsured motor vehicle" is binding on us unless we:

   a. Received reasonable notice of the pendency of the "suit" resulting in judgment or the negotiations resulting in settlement; and

   b. Had a reasonable opportunity to protect our interests in the "suit" or settlement.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

Hart Forms & Services
Reorder No. 14-D668

Copyright, ISO Properties, Inc., 2000

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to:

1. Punitive or exemplary damages.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. "Bodily injury" sustained by:

a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the applicable limit of Uninsured Motorists Coverage and Underinsured Motorists Coverage shown in the endorsement Schedule. However, subject to the provisions in D.1.a. and b. below, in the case of an "accident" involving both an "uninsured motor vehicle" and an "underinsured motor vehicle", the most we will pay is both the limit of Uninsured Motorists Coverage and the limit of Underinsured Motorists Coverage shown in the endorsement Schedule.

a. The limit entry for Uninsured Motorists Coverage in the endorsement Schedule applies only to "uninsured motor vehicles" as defined in Paragraph F.3. of the Additional Definitions Section.

b. The limit entry for Underinsured Motorists Coverage in the endorsement Schedule applies only to "underinsured motor vehicles" as defined in Paragraph F.4. of the Additional Definitions Section.

2. No one will be entitled to receive duplicate payments for the same elements of "loss".

We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

3. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", the limit of liability shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

4. Any amount paid under this coverage will reduce any amount an "insured" may be paid under this Coverage Form's Liability Coverage.

## E. Changes In Conditions

The following Condition is changed for Uninsured Motorists Coverage only:

**Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

Copyright, ISO Properties, Inc., 2000

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

The Conditions are changed for Uninsured And Underinsured Motorists Coverage as follows:

**1.** **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

**a.** The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

**b.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.

**c.** If the coverage under this coverage form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2.** **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved, and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**3.** The following Condition is added:

**ARBITRATION**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the parties may agree to arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. If both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision reached by two of the arbitrators will not be binding on either party.

**F.** **Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged, or

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent, or

**c.** Which is a hit-and-run vehicle and neither the driver nor owner can be identified or which causes an "accident" resulting in "bodily injury" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

Copyright, ISO Properties, Inc., 2000

    b. Owned by a governmental unit or agency;

    c. Designed for use mainly off public roads while not on public roads.

4. "Underinsured motor vehicle" means a land motor vehicle or "trailer" to which a liability bond or policy applies at the time of an "accident", but the amount paid for "bodily injury" to an "insured" under that bond or policy is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle:

    a. Owned or operated by a self-insurer under any applicable motor vehicle law;

    b. Owned by a governmental unit or agency;

    c. Designed for use mainly off public roads while not on public roads;

    d. Which is an "uninsured motor vehicle"; or

    e. For which an insuring or bonding company denies coverage or is or becomes insolvent.

Copyright, ISO Properties, Inc., 2000

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

## EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

> Boiler and Machinery Coverage Part
> Commercial Automobile Coverage Part
> Commercial Crime Coverage Form/Commercial Crime Policy
> Commercial General Liability Coverage Part
> Commercial Inland Marine Coverage Part
> Commercial Property Coverage Part
> Commercial Output Policy - Property Coverage Part
> Commercial Output Policy - Income Coverage Part
> Workers' Compensation and Employers' Liability Coverage Part

The following replaces the notification portion of the Cancellation provisions of all coverage parts and sections provided by this policy:

We may cancel this policy by delivering to the first Named Insured written notice of cancellation or nonrenewal at least:

**A.** 10 days before the effective date of Cancellation or Nonrenewal if we cancel or nonrenew due to the Insured's non-payment of premium; or

**B.** 60 days before the effective date of Cancellation or Nonrenewal if we cancel or nonrenew for any other reason.

**ALL OTHER CONDITIONS AND PROVISIONS OF THE POLICIES REMAIN UNCHANGED BY THIS ENDORSEMENT.**

**MLXB155 0600**                       Page 1 of 1                       **VSF**



**Nationwide®**
**Agribusiness**

*On Your Side*

RECEIVED

OCT 1 8 2004

October 15, 2004

Mr. Scott Heidepriem, Attorney at Law
Johnson Heidepriem Miner Marlow and Janklow LLP
PO Box 1107
Sioux Falls SD 57101-1107

Re:  Insured: Broin and Associates
     Your client: Patrick Baumgartner
     Our File No: 219217

Dear Mr. Heidepriem:

This letter is to let you know that the handling of the above matter has been transferred to me.  As I have just received the file, my review is not complete.  However, from my initial review I note your client's underinsured motorist (UIM) claim.

From my initial review of the policy, Farmland Mutual Insurance Company provided UIM coverage with $1,000,000 limits applicable to the vehicle, and Mr. Baumgarnter would be an insured.  The amount owing, if any, however, is to be determined.  As a starting point in evaluating the UIM claim, I am asking for a copy of the medical records in your possession as well as a signed medical authorization from your client.

Sincerely yours,

Stuart Shkolnick
Commercial Claims Specialist
Farmland Mutual Insurance Company
1100 Locust St Dept 3010
Des Moines IA  50391-3010
(515) 267-0431
Fax (800) 842-1482

EXHIBIT
B





EXHIBIT

C



# RELEASE AND INDEMNITY AGREEMENT

FOR AND IN CONSIDERATION of the payment of One Hundred Fifty Thousand Dollars ($150,000), paid by or on behalf of Adam Wiersma, Paul Wiersma, and Glee Wiersma ("Wiersmas") and Depositors Insurance Company ("Depositors"), the receipt and sufficiency of which is hereby acknowledged, the undersigned, do hereby for themselves, their heirs, personal representatives, and assigns, fully and forever release and discharge Wiersmas and Depositors from all claims, actions, and demands whatsoever, that now exist or may hereafter accrue, including all claims, actions and demands whatsoever based on matters now unknown, as well as known, and unanticipated, as well as anticipated, in any manner whatsoever, directly or indirectly, resulting or to result from a motor vehicle accident on March 17, 2004, in George, Iowa, involving a motor vehicle operated by Adam Wiersma.

The undersigned do hereby bind themselves individually, as well as their heirs, administrators, executors, successors and assigns, to repay Wiersmas and Depositors, or its parent or subsidiary corporation, or its heirs, administrators, executors, successors and assigns, any additional sum of money that Wiersmas and Depositors may hereafter be compelled to pay on account of the injury to Patrick Baumgartner on March 17, 2004, and the expenses incurred thereafter, because of any action or inaction on the part of any parties. It is acknowledged by all parties hereto that a policy of underinsurance coverage is in place to supplement the coverage afforded the Baumgartners, issued by Farmland Mutual Insurance Company in the amount of $1,000,000. Nothing in this agreement limits or confines the Baumgartners' access to those benefits. Prior to the release, the said underinsured carrier was put on notice to either substitute its draft (to retain subrogation rights against Releasees hereunder) or to waive those rights. The parties acknowledge that the underinsurer has waived those rights.

IT IS FURTHER AGREED that in the event the above action is tried either to a Court or a jury that Wiersmas and Depositors shall have no obligation whatsoever to advocate any position for Patrick Baumgartner.

IT IS FURTHER AGREED by Patrick Baumgartner that he shall hold the parties hereby released harmless and indemnify them from any and all claims of any other persons, firms, corporations, or entities, whether for contribution or indemnity, which arise out of the above-described injuries Patrick Baumgartner suffered on March 17, 2004, and the expenses incurred by Patrick Baumgartner thereafter, it being specifically understood that there shall be no obligation on the part of any of the parties hereby released to defend or prosecute those matters further in connection with any said claim for contribution or indemnity.

The undersigned agree to be responsible for payment of any and all claims for subrogation or reimbursement or for health care expenses that may have arisen as a result of the motor vehicle accident. The undersigned agree to defend, indemnify, and hold the parties hereby released from any such claims or expenses.

This Release contains the entire agreement between the parties hereto and the terms of this Release are contractual and not a mere recital.

EXHIBIT
tabbies
D

The undersigned state that they have carefully read the foregoing Release and Indemnity Agreement and know and understand the contents thereof and have signed the same as their own free act.

Dated this 8th day of September, 2004.

_____
Patrick Baumgartner

_____
Jamie Baumgartner

STATE OF SOUTH DAKOTA )
                              :ss
COUNTY OF MINNEHAHA )

On this, the 8th day of September, 2004, before me, the undersigned officer, personally appeared **Patrick Baumgartner** and **Jamie Baumgartner**, known to me or satisfactorily proven to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public - South Dakota

My Commission Expires:   July 15, 2009

(SEAL)

JENNIFER PARKER
NOTARY PUBLIC
SOUTH DAKOTA
SEAL   SEAL

2